22-433. Thank you. Good morning. May it please the court. Kendra Hutchinson of Federal Defenders of New York for the Appellant in this matter, Mr. Woodberry. I'd ask the court for two minutes for rebuttal. Yes. And I will focus my argument on the procedural error that occurred here. Your Honor, the district court in this case misunderstood its authority to downwardly depart to give effect to the guideline range and the plea agreement, which both parties requested at the sentencing hearing and in their papers. I say that the district court judge misunderstood because she was aware of the plea agreement. She references it. She talks about how she sees this all the time, and she decides then not to apply or impose a sentence within that range, and it's slightly higher. She goes through the calculation that varies downward from the correct, what I think is conceded to be ultimately the correct guideline sentence. So what makes you say specifically? What do you point to specifically? Certainly, Your Honor. What we have here is affirmative evidence that the judge did not understand that she had this authority. Quote on page 116 of the appendix. The government is recommending 78 months because you want to stick to the plea agreement, and I still don't understand that argument. Words have meanings, Your Honor. The court did not say at that point. I don't understand why she doesn't say when she says I don't understand that argument. That just means that it doesn't mean she didn't have authority. She said it was or she didn't. Well, Your Honor, she didn't say I reject that argument or I do not find the party's request for this guidelines range appropriate. She said I still don't understand that argument and then segued into a discussion of whether or not this violated the plea agreement. There's no assurance from this record, and you know, in particular, this is not a record with silence, Your Honor. But didn't she go on to say at page 116 you cited? Does the court note that neither probation nor the court are subject to the calculations of the plea agreement? And that's a good reason because often there are either mistakes or information that's missing at the time the plea agreement is entered into. So the court acknowledges that it's not bound by the calculation. Why isn't that enough to tell us that the court understood its role vis-a-vis the role of the parties and probation? You're absolutely correct, Your Honor. The court did recite at various points in the plea agreement and in the plea hearing and in the sentencing hearing that she had the authority to depart or vary and that the guidelines were advisory. You know, we concede this. But the problem here is this very specific statement that the court made that she still doesn't understand that argument. And that really distinguished this case from- But counsel, look, we can understand why your client is unhappy. I mean, they were, she thought that she was getting something and then it turned out that was wrong and so something else was done. But if we looked for any statement that a district judge makes that could be read to be an error, frankly, we would find one in every single case because district judges are busy. They have a lot to do. So isn't our job to try to figure out whether this judge understood or not? And lots going on that suggests that she did. No, that's right, Your Honor. You know, there is a lot going on in any sentencing hearing, absolutely, and district judges are very busy. But this case is distinguishable from other cases before this court. For example, the government relies heavily on Torres from last year. And in that case, the judge explicitly cited this court's precedent and Fernandez stated, I decline to grant a departure under that case and thoroughly explained it. Here we have a different situation. And we also, I just want to note, this is a very unusual case. This is a case in which the government had all of the criminal history before it when it entered into the plea agreement and it chose to stick to that plea agreement along with the defense before the court. I mean, this was a very substantial bump up as the district court acknowledged. This more than doubled the defendant's range. And it seems, you know, the record is silent as to this, but it seems very possible that the government decided, as it had at the plea agreement, that this was unwarranted. And, you know, this thus is not Torres. Again, another example, or United States versus Byrd, which the government cites. This is one of those unusual cases where both parties requested it and it is not clear. And, you know, if we- Well, I don't know how unusual it is. Since, you know, human beings screw up all the time and sometimes these criminal history issues are done in error. And it was, I don't think, I know that you're not blaming the government, per se, for making a mistake with respect to what ultimately appears in the plea agreement. It was on both sides. If she, so obviously if she had not said, I don't understand, just that part, I don't, you would not be making the argument that you're making. So it's really the, I don't understand. I think that's really critical to this argument, Your Honor. I do. I think that distinguishes this case from any other case before this court. And, you know, if the court is in disagreement with our primary argument, which is that there's a substantial indication on this record, I would just point this court to the long line of cases about where there's ambiguity. This court will remand for resentencing so that the judge can clarify. In this regard, you know, United States versus Thorpe, an old case, 1999, I think is very instructive. In that case, the judge- But, counsel, what you're really wanting us to do is by finding an ambiguity, say to the district judge, look, the government and the client agreed on something. It seems like a sensible thing. Have another look. That's really what you want us to do. And I'm not sure that that we have authority to do. Well, Your Honor, I mean, you know, we'd contend that the ambiguity cases from this court would ask, you know, would counsel, wisely counsel for a remand here where Judge Arizeri could very well say, on the record, I understand I have this authority and I think this is the wrong range. You pointed out that the ambiguity decisions are relatively old. Is that fair? Yes. Okay. Yes, yes. Okay. And, you know, I think that the sands have shifted a little bit, but I might be wrong, so that we now require a substantial indication. That's the buzzword or term. Is that a shift in our precedent or how do we view that? Yeah, I mean, I think I was thinking about this, too, Your Honor. It seems to me that they're addressing very similar issues. It just may be that the substantial indication is more specific to the downward departure sort of aspect of this court's jurisprudence. But I do think that they're both getting at the same thing. In most of those cases, Your Honor, most of the ambiguity cases, you know, there was a proper consideration that the court could have, you know, sentenced upon, and there was an improper one. And yet this court weighed it and still sent it back for resentencing. So I think that they're probably getting at the same thing, even if this court's, you know, jurisprudential gloss on it is a little bit different. And for that reason, we think it counsels for resentencing here, Your Honor. Very helpful. Thank you. Thank you. You've reserved two minutes. We'll hear from the government. Good morning. Good morning, Your Honors, and may it please the Court. Anna Karamidzios. I'm an assistant United States attorney in the Eastern District of New York, and I was also one of the AUSAs assigned to represent the government below. Your Honors, just to refocus us briefly on what actually happened here, the district court imposed a below-guideline sentence, and as Your Honor pointed out, the guidelines were not in dispute. After considering the Section 3553A factors, including all of the mitigating circumstances urged by the defendant, this court would presume under well-established precedent that the court understood its authority to depart even further or to vary further, absent a substantial indication to the contrary, which I submit is completely lacking here. To the contrary, the record makes clear that the district court fully understood its authority, under Fernandez or under the advisory guidelines, to impose an even lower sentence. You would agree that it would make our job a little bit easier if the district court judge, who's a wonderful judge, hadn't said, I don't understand the argument, because the argument is that you can depart downward based on the sentencing range in the agreed, the plea agreement, and the response is, I don't understand the argument. And I'm not, you know, this is, I'm not sure that it's as clear as you're indicating. Your Honor, I, of course, it would make this court's job easier, but I do submit that if you read the transcript in its entirety, it's abundantly clear that the district court fully understands its authority. And as to that specific quote, which is that- When you say it's abundantly clear, point me to, point us to something. Yes, Your Honor. I mean, Judge, so Judge Kahn pointed to 116. Yes, Your Honor, I was about to address that quote at 116, and then I can cite to other examples for the court as well. At 116, what is clear from the context is that the district court is addressing the government only and stating that it disagrees with the government's decision to stick to the guidelines estimate in the plea agreement, given the fact that the plea agreement also says that we aren't bound by our estimate in the plea agreement, just like the court notes probation is not bound and the court itself is not bound. That quote is taken out of context, I submit, in the appellant's briefing. And when read in its entirety, makes clear that what the district court doesn't understand is why the government felt it couldn't argue for a sentence above the estimated range in the plea agreement. And I point, Your Honor, to various points in the record. At the guilty plea, at Appendix 53, the district court explained departures and variances. At Appendix 55, it explained that it had to balance the Section 3553A factors and determine whether a non-guideline sentence or a departure is warranted in the case. At sentencing at Appendix 89, the district court explained that the guidelines are advisory, that they're just the starting point for the court's analysis in sentencing, and that it must always consider whether variances or departures are appropriate. The record is replete with instances where the district court acknowledged its own authority to impose- All right, so let me ask you a little bit more generally. What is so bad about whenever there is any doubt- I understand that our precedents run the other way- but whenever there is any doubt, sending it back on a Jacobson remand and making sure that the district court knows what it was doing? After all, if there's even a slight chance it didn't, the court would do that. If it knew what it was doing, it would say so. What's the big deal? Now, I understand that our precedents don't do that, that we don't send it down, but I've always wondered why. I think, as your Honor correctly pointed out a moment ago, every sentencing record will have some phrase when taken out of context, could be argued, gives rise to some ambiguity, and that's not what this court has said in the past should be the standard that should be applied. The standard here is that we presume the court understands its authority, absent a substantial indication to the contrary. Here, we are miles away from meeting that standard. But you would agree, and maybe this is a twist on Judge Calabresi's question, because I've always wondered why, I guess, too, that if there were a real lack of confidence, for whatever reason, based on the transcript of the sentencing hearing, that the district court understood her authority. Even though there was no substantial indication, we just lack confidence that the district court judge fully understood her authority. Would that be a reason to remand? I submit that it wouldn't, your Honor, under this court's well-established precedents, and particularly in this case where we're dealing with an already below-guideline sentence. This court has clearly stated that absent that substantial indication, the standard is not a suspicion or a concern, it's a substantial indication that the district court misunderstood its authority. Absent that, remand is not warranted. And I would submit again, your Honor, that on this record in particular, there is no doubt that the district court fully understood her authority to impose a sentence within the plea agreement range, or the 48-month sentence, which, by the way, is outside of the plea agreement's range, that the defendant was urging. What the district court said is, I'm willing to depart or vary modestly given the harsh conditions of COVID, and she rejected the rest of the defendant's arguments and imposed a sentence 31 months below the undisputed applicable guidelines range. So on these facts, your Honor, remand is certainly not warranted. By the way, what happened? Just what happened? Wow, that's a pretty big swing. I have asked myself the same question, your Honor. It was just a genuine mistake and failure to- I paid your shoes, but sometimes there's some back story. No, your Honor, there's no satisfactory answer for myself or the court other than that we missed that he qualified as a career offender. I, of course, can't speak to defense counsel. He also had the defendant's criminal history and did not correct the error. Thank you. Thank you very much. Thank you, your Honors. Very briefly, your Honors, I think we really are coming down to that really important phrase in this case. I still don't understand that argument. The government contends that this language was directly responsive to the government's request. If it were, as I was saying before, if it were, words have meaning, the court could have said, I disagree with the government. That range is too low. No, not here. Instead, the judge said, I still don't understand, and then segued into a discussion of whether it violated the plea agreement. I think that that creates- But how do we read I don't understand out of context? Because having been a trial judge, I have often said I don't understand, and it could just be momentarily. I don't understand where something is in the record. It doesn't mean I don't understand my role or what my authority is versus what the parties are arguing. So how do you respond to your opponent's position that you can't just take the words I don't understand in isolation. You have to read them in context. Well, and I appreciate your sharing your experience on the bench, your Honor, because you're right. That is important here. But I think to get back to what Judge Calabrese and Judge Loyer were saying, when you lack confidence here, when we're really having that question as we look at this as to what this means, this is what this court said in United States v. Corsi. This is a case clouded by the possibility of error, and a remand for resentencing really is not a disruptive proceeding. And this court has blessed it in instances just to make sure that the record is right. And so I think that's what should be done here, Your Honor, just when we have this doubt. And the last point I'll make is I appreciate my adversary's candor and what happened in this case. Obviously, I did not represent personally the defendant below. But this was a mistake, and yet the government stuck by it, as did the defense. And the plea agreement did not obligate them to. They were not required to stick to an argument. They could have gone up. So I just would bring that to the court's attention. Thank you. Thank you very much. Thank you. A very helpful, well-reserved decision.